IN IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Morris D. Green, | ) | C/A No.: 1:20-821-DCC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| C. Thomas, PA, Edgefield FCI | ) | |
| Health Services; Dr. Collins, | ) | |
| Edgefield FCI Health Services; | ) | |
| Tanner, Pharmacist, Edgefield FCI | ) | REPORT AND |
| Health Services; S. Lanham, | ) | RECOMMENDATION AND |
| Edgefield Health Services; | ) | ORDER |
| Morgan, CO, Edgefield FCI; Bryan, | ) | |
| CO, Edgefield FCI; Franklin, CO, | ) | |
| Edgefield FCI; Lt. Broadwater; | ) | |
| John and Jane Does, Edgefield | ) | |
| FCI, and other John and Jane | ) | |
| Does, | ) | |
| | ) | |
| Defendants. | ) | |

Morris D. Green ("Plaintiff"), proceeding pro se and in forma pauperis,
brings this action alleging a violation of his Eight Amendment rights while
incarcerated at the Federal Correctional Institution located in Edgefield,
South Carolina ("FCI-Edgefield"), a facility of the Bureau of Prisons, against
C. Thomas ("Thomas"), F. Collins ("Collins"), C. Tanner ("Tanner"), S.
Lanham ("Lanham"), F. Morgan ("Morgan"), R. Bryan ("Bryan"),[1] E. Franklin

---

[1] Defendants have informed the court that the defendant identified as Bryant

("Franklin"), and S. Broadwater ("Broadwater") (collectively "Defendants"), each in their individual capacities. Plaintiff's constitutional claims are brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

This matter comes before the court on Plaintiff's motion to amend his complaint [ECF No. 40] and Defendants' motion for summary judgment, which Defendants state is also brought pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). [ECF No. 43].[2] Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [ECF No. 44]. The motions having been fully briefed [ECF Nos. 41, 42, 48], they are ripe for disposition.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the parties' submissions and the record in this case, the undersigned denies without prejudice Plaintiff's motion to amend and recommends the district

---

is Bryan. [*See* ECF No. 43-8]. The undersigned employs the correct spelling of Bryan's name and directs the Clerk of Court to correct the caption accordingly.

[2] Because the court has considered matters outside of the pleadings, the undersigned considers the motion as one for summary judgment. Fed. R. Civ. P. 12(d).

judge grant in part and deny in part Defendants' motion for summary judgment.

I.    Factual Background

In his verified complaint and sworn declaration,[3] Plaintiff alleges that on or about March 9, 2019, late in the night, extending to the early hours of March 10, 2019, he experienced severe pain in the lower right area of his abdomen, fever, nausea, vomiting, and distress. [ECF No. 1 ¶ 2; *see also* ECF No. 48 at 4, 7]. At that time, Plaintiff was secured in his cell with his cellmate, Dameyon Newton ("Newton"), and Plaintiff and Newton alerted Morgan, the correctional officer on duty, as to Plaintiff's condition by pressing the emergency alert system in the cell. [ECF No. 1 ¶¶ 2–4; *see also* ECF No. 48 at 4, 7].[4] Morgan notified the lieutenant on duty and informed Plaintiff that the lieutenant stated to "hold on until morning because there's no medical staff available." [ECF No. 1 ¶ 6; *see also* ECF No. 48 at 4, 7].

On the morning of March 10, 2019, Bryan relieved Morgan, Morgan informed Bryan as to Plaintiff's condition, and Bryan sent Plaintiff to medical, assisted by another inmate, David Brown ("Brown"). [ECF No. 48 at

---

[3] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

[4] In Plaintiff's complaint, he states multiple unknown corrections officers were alerted at this time, but appears to clarify in his declaration submitted in response to Defendant's motion that only Morgan, and thereafter Bryan,

4–5, 8; *see also* ECF No. 48-2 at 12–14 (Brown declaration)].[5] Plaintiff was seen by Thomas, the registered nurse on duty, who he informed that he was suffering severe pain in his lower right abdominal area and was hot and feverish. [ECF No. 1 ¶¶ 7–8].[6] Plaintiff's medical record from this visit indicates he informed Thomas he may have food poisoning. [ECF No. 43-12]. After examining him, Thomas informed Plaintiff "[e]verything sounds normal" and "[i]t's probably just a stomach virus like the one I've got at the house." [ECF No. 48 at 8]. Thomas provided Plaintiff with medication and informed him he would be examined the following day. *Id.* at 9. Plaintiff returned to his cell, where that night he continued to suffer extreme pain and discomfort as his condition worsened. [ECF No. 1 ¶ 10].

Regarding March 11, 2019, Plaintiff alleges both that he continued to be in extreme pain with a high fever and could not get out of bed, *id.* ¶ 11, and that, although he was in pain the night of March 10, 2019, on March 11, 2019, he "was feeling ok" and "decided to wait and see if [his] name would appear on the inmate call-out for the next day of March 12th." [ECF No. 48 at 9].[7]

---

were notified. [*See* ECF No. 1 ¶¶ 2–6; *see also* ECF No. 48 at 4, 7].
[5] Plaintiff clarifies in his response to Defendants' motion that both Morgan and Bryan were named in this suit "only as a witness." [ECF No. 48 at 4–5].
[6] Plaintiff incorrectly identifies Thomas as a physician's assistant. [*See* ECF 43-3 ¶ 1].
[7] Plaintiff additionally alleges in this complaint that unknown officers and

On March 12, 2019, an institutional emergency occurred, resulting in Edgefield FCI being placed on "lock down," with prisoners confined to their cells. [ECF No. ¶ 14]. Plaintiff alleges generally that during the lock down, from March 12, 2019, through March 18, 2019, he "was locked in his cell, denied medical treatment and almost died from acute appendicitis that got infected and abscessed . . . ." *Id.* ¶ 15. Plaintiff also alleges that from March 14, 2019, to March 18, 2019, he became psychologically impaired and started experiencing fever-induced delirium, could not eat or sleep, sweated profusely, laid in his bed in the fetal position in extreme pain, and was in and out of consciousness. *Id.* ¶¶ 19, 21. During this time, Plaintiff identifies Tanner, Collins, Bryan, Morgan, Lanham, Franklin, and others as going "by Plaintiff's cell" with "some of them look[ing] inside," but alleges none took action even though he or Newton alerted them to his condition. *Id.* ¶ 20. Plaintiff states he made efforts to receive medical attention, using the emergency alert system, verbally alerting staff, and providing written requests to Tanner, Collins, Lanham, Franklin, and others. [ECF No. 1 ¶ 22; *see also* ECF No. 48-2 at 45 (Plaintiff's written request for medical assistance dated March 18, 2019, describing his condition)].

---

their shift supervisors were aware of Plaintiff's medical condition and that the officers informed him that the medical staff had been alerted. [ECF No. 1

More specifically, on the morning of March 12, 2019, Plaintiff stopped Tanner, who was in Plaintiff's unit dispensing medication, to inform her about his condition. [ECF No. 1 ¶ 16; ECF No. 48 at 9]. Plaintiff explained to Tanner his painful "nightly experience," that Thomas had examined him, and that he was supposed return to medical for follow up. [ECF No. 48 at 9–10]. Tanner suggested Plaintiff complete a sick-call request, which he did. *Id.* at 10. That afternoon, Tanner informed Plaintiff that she turned in the request and that Plaintiff may be seen by medical the following day. *Id.* Plaintiff also alleges that at some point on this day, he also used the emergency alert system and had Newton alert staff as to Plaintiff's condition. [ECF No. 1 ¶ 13]. Bryan informed Plaintiff that the shift supervisor was alerted to his condition. *Id.*

On March 13, 2019, Newton stopped corrections officer Boyd ("Boyd") to ask for medical when Tanner and another person were entering Plaintiff's unit. [ECF No. 48 at 10]. Plaintiff states he "explained my nightly experience" to the unknown person and gave him another sick-call request. *Id.*

On the morning of March 14, 2019, Plaintiff submitted another sick-call request to Tanner, who could not explain why Plaintiff had not been seen by medical, even though another inmate in the next cell was taken to medical when he complained of low blood pressure. *Id.* at 11. That evening, Plaintiff

¶ 11]. However, no medical attention was provided that day. *Id.* ¶ 12.

spoke about his condition with Collins, the staff dental officer who was assisting medical personnel in distributing medications during the lockdown, and gave him a sick-call request. [ECF No. 48 at 11; ECF No. 43-4 ¶¶ 4–5].

On March 15, 2019, Tanner and Collins were dispensing medication in Plaintiff's unit again. [ECF No. 48 at 11]. Plaintiff states that he "assum[ed] it would be pointless to speak with either of them again," so he "slid[] another sick-call request on random paper through the door." *Id.*

On March 17, 2019, Plaintiff states he was "so exhausted with my entire body aching from lack of sleep and the long hours spent uncomfortable in my chair and floor that I realized I [had not] been sleeping but rather passing out." *Id.* at 11–12. That evening, Newton woke Plaintiff, suggesting he speak with a nurse they do not see often. *Id.* at 12. Because Plaintiff was feeling increased pain in his lower abdomen, Newton assisted Plaintiff to the door where they encountered Lanham. *Id.* Plaintiff spoke in depth with Lanham about his condition, the nightly experiences of pain and increase in pain in his lower abdomen, and submitted another sick-call request. *Id.* at 12. Lanham accepted his sick-call request and stated to Plaintiff that "I don't want to sound like I'm spinning you, but you have to wait until tomorrow. But I will give this to your provider though." *Id.*

Later that night, Plaintiff's pain increased earlier than it had previous nights and was significant. *Id.* Newton pressed the emergency alert system,

7

to which corrections officer Russell ("Russell") responded, and Plaintiff explained he was feverish, sweating profusely, constipated, had no appetite, was in pain in his abdomen, and could not stop vomiting. [ECF No. 48 at 12–13; *see also* ECF No. 48-2 at 10, 14, 16, 19, 23, 26, 29, 32, 36, 39 (10 inmates declaring they heard on March 17, 2019, an emergency alert system going off and hearing "other inmates confirming that it was Green asking [for] medical assistance again.")].

Russell contacted Broadwater, but informed Plaintiff upon her return that she was instructed to monitor him and see if his condition worsened and that no medical staff was available. [ECF No. 48 at 5–6, 13; ECF No. 48-2 at 36].[8] Plaintiff asked Russell, "How much worse does it have to get? When I'm vomiting blood?" [ECF No. 48 at 13]. Russell responded, "I guess she wants you on the ground," presumably referencing Broadwater. *Id.*

Plaintiff alleges that on or about March 18, 2019, the lock down ended, allowing prisoners to exit their cells. [ECF No. 1 ¶ 24].[9] That morning, corrections officer Dibbie ("Dibbie"), in response to Plaintiff's request that

---

[8] Plaintiff has submitted a request to staff indicating that Broadwater was the shift lieutenant on duty on the night of March 17, 2019, when Plaintiff explained his medical condition to Russell. [ECF No. 48-2 at 46]. Broadwater has submitted declaration that she had no supervisory responsibilities on any of the dates which Plaintiff alleges, but references specifically only the dates March 11, 2019, through March 15, 2019. [ECF No. 43-10 ¶ 4].

[9] According to Defendants, the lock down ended on March 20, 2019. [*See, e.g.*, ECF 43-7 ¶ 5; ECF No. 43-8 ¶ 5].

medical be contacted, stated Russell had told Dibbie about Plaintiff and that Dibbie would call medical. [ECF No. 48 at 13–14]. Also that morning, around 8:30 a.m., Newton tried to get the attention of Lanham, banging on the door and flashing the cell lights. *Id.* at 14. Plaintiff states Lanham "recogniz[ed] us and recalling the situation, Lanham held up her palm as if to say okay" and said something to Franklin, who approached Plaintiff's cell and informed Plaintiff that Lanham was "going to talk to your provider now." [ECF No. 48 at 14; *see also, e.g.,* ECF No. 48-2 at 37].[10]

About an hour went by without Plaintiff going to medical, during which time other inmates started shouting at Franklin for Plaintiff to receive medical attention. [*See* ECF No. 48-2 at 37 (inmate declaring that he heard Franklin inform Plaintiff or Newton that Lanham was going to speak with Plaintiff's provider now, but after an hour passed, he "began shouting at Franklin to get help"); *id.* at 3, 7, 10, 14, 16, 19, 26, 29, 32, 39, 43 (additional 11 inmates declaring that on March 18, 2019, they either shouted at Franklin or heard other inmates shouting at Franklin to get help for Plaintiff); *see also id.* at 24 (additional inmate declaring that "[o]n 3/18/19 approximately 9 a.m. I asked c/o Franklin why [he hadn't] called medical for Green")].

---

[10] Lanham states that on March 18, 2019, she was assisting in dispensing medication during the lock down and was notified by Franklin that Plaintiff had a medical complaint. [ECF No. 43-6 ¶ 4]. Lanham states she went to Plaintiff's cell and then relayed to health services Plaintiff's complaint that

During this time and at around 9:40 a.m., Franklin unsecured the doors to Plaintiff's cell, and both Plaintiff and Newton informed Franklin that Plaintiff needed medical because he "was hurting much worse than before." [ECF No. 48 at 15]. After 20 minutes elapsed, Newton assisted Plaintiff to Franklin's office. *Id.* Franklin saw them before they made it to his office door and stated he had called medical several times, they had not returned his call, but that he would call them, presumably again. *Id.* Plaintiff insisted something was wrong with him, to which Franklin responded he would call medical but "you gotta give me time though." [ECF No. 48 at 15; *see also* ECF No. 1 ¶¶ 24–27 ("Franklin did not contact medical and did not take any action to get plaintiff medical care for several hours on March 18, 2019")]. At roughly 10:40 a.m., Franklin alerted Plaintiff that medical was calling for him. [ECF No. 48 at 15].

At medical, Thomas examined Plaintiff and stated everything seems normal, to which Plaintiff protested that something was wrong, requesting procedures such as an x-ray and urine sample. *Id.* at 15–18. Following these procedures and continued non-productive conversation with Thomas, Tanya Burks ("Burks") examined Plaintiff. [ECF No. 1 ¶ 28; ECF No. 48 at 15–18; *see also* ECF No. 43-13 (medical records for March 18, 2019)].[11] Thereafter,

---

he was having abdominal pain. *Id.*

[11] Plaintiff states a "shouting match ensued" between him and Thomas, and a

Plaintiff was transported to the local hospital in Edgefield, South Carolina, given another x-ray, and was informed by the doctor there that he needed immediate surgery. [ECF No. 48 at 18]. Plaintiff was transported to a larger hospital in Aiken, South Carolina, and admitted from March 18, 2019, to March 28, 2019. *Id.* at 19. It was determined Plaintiff had acute appendicitis complicated by appendicular abscess, and Plaintiff's appendix was surgically removed on March 19, 2019. [ECF No. 1 ¶¶ 28–29].

Plaintiff was informed by attending physicians and other medical care providers at the local hospital that he had been "very close to death" and had he "not been in such good physical condition the abscessed appendix and infection that was released into Plaintiff's blood stream would most probably have caused his death." *Id.* ¶ 31. Plaintiff lost approximately 20 pounds and it took months for him to recover. *Id.* ¶ 32. Plaintiff alleges he continues to suffer from both physical and psychological effects of the incident where his pleas for help were repeatedly ignored and where "in some case[s] defendant[]s ridiculed plaintiff; threatened him with disciplinary action for pushing the 'emergency medical' button in his cell, and deliberately refused

---

secretary intervened convincing Thomas to agree to more testing and secretly asking Burks to examine Plaintiff immediately afterwards. [ECF No. 48 at 23]. Plaintiff states that without the secretary's intervention, "Thomas would have sent Plaintiff back to his unit to possibly die." *Id.* (emphasis omitted).

plaintiff medical treatment." *Id.* ¶ 33.[12]

Plaintiff submitted an informal resolution form on April 1, 2019, stating in part that "[f]rom 3-11-19 thru 3-17-19 staff ignored [my] pleas for help." [ECF No. 1-2 at 2]. The staff response states "[a]ll sick-call requests were triaged during institutional lockdown" and "[t]he day you were released is the day you were scheduled to be followed up by the provider." *Id.* Plaintiff appealed the decision and received the following response in part: "A review of our medical records revealed you were evaluated by a provider on March 10, 2019 . . . . You were advised to follow-up at sick-call as needed and return immediately, if conditions worsen. You did not return until March 18, 2019 . . . ." *Id.* at 5; *see also id.* at 8 (Plaintiff stating "[t]he Regional Director's response . . . like the Warden's response . . . completely fails to address my allegations that . . . personnel/staff/guards ignored my pleas for medical attention while confined to my cell during lock-down . . . .")].[13]

## II.    Discussion

### A.    Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[12] Although not alleged as a part of his complaint, Plaintiff further alleges that upon his return to FCI-Edgefield, he did not receive the needed follow-up care following his surgery. [ECF No. 48 at 19–20].

[13] Defendants do not contest Plaintiff's statement that his administrative

to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to

---

remedies have been exhausted. [ECF No. 43 at 4].

allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    B.    Analysis

        1.    Defendants' Motion for Summary Judgment

            a.    Public Health Service ("PHS") Immunity

Officials of the PHS have been held to be absolutely immune from suit under the terms of the Public Health Service Act, 42 U.S.C. § 233(a)(1998). Section 233(a) makes the Federal Torts Claims Act the exclusive remedy for legal actions against members of the PHS "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions . . . , by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment." *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000). Section 233(a) precludes a *Bivens* action against PHS employees. *Hui v. Castaneda*, 559 U.S. 799, 806 (2010). "Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions

against them for such conduct." *Id.*

Section 233(a) protects commissioned officers or employees of the PHS from being subject to suit while performing medical and similar functions by requiring such lawsuits be brought against the United States instead. *Id.* Where "Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective," the plaintiff is barred from bringing a *Bivens* action. *Carlson v. Green*, 446 U.S. 14, 18–19 (1980). Section 233(a) is just such an alternative remedy. *Id.* at 20 (citing § 233(a), in the *Bivens* context, as an example of a statutory provision that explicitly designates an action under the FTCA as the exclusive remedy).

At all times relevant to this litigation, Thomas, Tanner, and Lanham were commissioned officers in the PHS. [ECF No. 43-3 ¶ 1; ECF No. 43-5 ¶ 1; ECF No. 43-6 ¶ 1]. Therefore, the undersigned recommends dismissal of Plaintiff's *Bivens* claims against them.

b.     Deliberate Indifference to Medical Need

To establish an Eighth Amendment violation, Plaintiff must show Defendants exhibited "deliberate indifference" to his "serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). A claim of deliberate medical indifference requires more than a showing of mere negligence, *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976),

and "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted).

Non-medical prison employees can be found to have acted with deliberate indifference by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. Under the "high 'deliberate indifference' standard, even subjective knowledge of [a prisoner's] medical needs is not enough; the officers must have *actually known that their response was inadequate* to address those needs . . . ." *Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) (emphasis in original). "[O]fficials evince deliberate indifference by acting intentionally to delay or deny the prisoner access to adequate medical care or by ignoring an inmate's known serious medical needs." *Sharpe v. S. Carolina Dep't of Corr.*, 621 Fed. Appx. 732, 733–34 (4th Cir. 2015) (citing *Estelle*, 429 U.S. at 104–05; *Young v. City of Mount Ranier*, 238 F.3d 567, 576 (4th Cir. 2001)). "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Id.* at 734 (citation omitted).

Additionally, under the qualified immunity defense, "government

officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity ensures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Whether an officer is entitled to qualified immunity is a question of law for the court and, when there are no relevant disputed material facts, a court should rule on the qualified immunity issue at the summary judgment stage. *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) ("Ordinarily, the question of qualified immunity should be decided at the summary judgment stage.").

To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. *Id.*

Defendants do not dispute that Plaintiff suffered from acute

appendicitis complicated by appendicular abscess, a serious medical condition. Defendants do not dispute that Plaintiff saw medical personnel on March 10, 2019, and March 18, 2019, leading to the surgical removal of Plaintiff's appendix on March 19, 2019. What is in dispute is whether or not Plaintiff has put forth sufficient evidence that Collins, Franklin, and Broadwater were deliberately indifferent to his serious medical needs in the interim period that coincided with a lock down of FCI-Edgefield.[14]

Plaintiff has put forth sufficient evidence to create a triable issue of fact as to his claims against these defendants for deliberate indifference to his serious medical needs. Plaintiff has put forth evidence that he explained to both Collins and Franklin the severity of his condition, provided them sick-call requests, and was repeatedly ignored. [*See, e.g.*, ECF No. 1 ¶¶ 20, 22 (alleging Plaintiff gave Collins, Franklin, and others sick-call requests and that Collins, Franklin, and others "went by Plaintiff's cell" with "some of

---

[14] As stated above, Plaintiff clarifies in his response to Defendants' motion that both Morgan and Bryan were named in this suit "only as a witness," although Plaintiff states that "if Morgan never notified the Lieutenant and fabricated said statement [that no medical was available until the morning] then he too showed deliberate indifference to petitioner's serious medical need." [ECF No. 48 at 4–5]. Morgan has submitted evidence that he does not "recall Mr. Green complaining about any health concerns during this shift," on March 10, 2019, but that "if an inmate had made any complaints, [he] would contact Health Services or the supervisor on duty." [ECF No. 43-7 ¶ 4]. Because there is no indication on the record that Morgan did not notify the lieutenant or fabricated any statement, and because Plaintiff states he has identified these defendants only as witnesses, and thus does not bring claims

them look[ing] inside," but did not take action even though each were alerted "to the gravity of plaintiff's condition"); ECF No. 48 at 11 (alleging on March 14, 2019, Plaintiff spoke with Collins about his condition and gave him a sick-call request and also submitted another sick-call request to Collins, accompanied by Tanner, the next day); *id.* at 14–15 (alleging on March 18, 2019, Franklin was repeatedly informed about Plaintiff's condition but he was not seen by medical in a timely manner); ECF No. 48-2 at 3, 7, 10, 14, 16, 19, 24, 26, 29, 32, 37, 39, 43 (13 inmates declaring that on March 18, 2019, they sought help from Franklin or heard other inmates shouting at Franklin to get help for Plaintiff]. Additionally, Plaintiff has put forth evidence that Broadwater was contacted by Russell, who had been thoroughly informed of Plaintiff's condition, and that Broadwater directed Russell to monitor Plaintiff to see if his condition worsened and stated that no medical staff was available. [ECF No. 48 at 5–6, 13; ECF No. 48-2 at 36, 46].

Defendants submit evidence that Collins has no recollection of Plaintiff being in medical distress or receiving a sick-call request from him, and Broadwater had no supervisory responsibilities on any of the dates which Plaintiff alleges he was notified about Plaintiff's medical condition and never received information about Plaintiff's medical complaints. [ECF No. 43-4 ¶ 6, ECF No. 43-10 ¶¶ 4–5]. However, this evidence is inconsistent with the

against them, the undersigned recommends dismissal of Morgan and Bryan.

evidence submitted by Plaintiff, creating a triable issue of fact precluding grant of summary judgment.

Additionally, Defendants argue Franklin relied on Lanham's expertise in determining whether Plaintiff needed immediate treatment on March 18, 2019, warranting grant of summary judgment as to Franklin. [*See* ECF No. 43-9 ¶¶ 4–5]. However, the record does not reveal that Lanham employed any expertise in determining whether Plaintiff needed immediate treatment on March 18, 2019. Lanham simply communicated she would contact Plaintiff's medical provider.[15] Additionally, Plaintiff has put forth evidence that Franklin also attempted to contact medical, Plaintiff was not seen by medical in a timely manner, and, during the interim, Plaintiff was in pain and

---

[15] Defendants repeatedly argue the non-medical defendants, including Collins, Franklin, and Broadwater, were entitled to rely on the judgment of medical personnel in determining the appropriate care for Plaintiff. [*See, e.g.*, ECF 43 at 13–15]. However, no judgment by medical personnel was provided after Thomas's treatment of Plaintiff on March 10, 2019, until Plaintiff saw Thomas again on March 18, 2019. Although Defendants argue medical personnel were in the vicinity of non-medical defendants during the relevant time period, it is undisputed these medical personnel provided no medical treatment. In short, based on the facts put forth by Plaintiff, there was no relevant judgment of a medical personnel provided to rely upon. *See, e.g., Iko*, 535 F.3d at 242 (upholding denial of qualified immunity, stating "[t]his case does not, however, present a situation in which prison officials might be held liable for the actions or inactions of a medical professional. The officers face liability for *their own* decisions, made while Iko was in their charge. . . . There was therefore no medical opinion to which the officers could have deferred. Instead, the question here is whether the officers should be permitted to defer to the nurse's apparent decision *not to treat* Iko after he was pepper sprayed, and after he collapsed in their presence.")(emphasis in

multiple other inmates shouted at Franklin to get help for Plaintiff, which, viewing the facts in light most favorable to Plaintiff, Franklin ignored.

As stated above, deliberate indifference can be manifested by intentional denial or delay of access to medical care. *Estelle*, 429 U.S. at 104–05. There remains of a question of material fact as to whether these defendants' delay in allowing Plaintiff access to medical care amounts to the deliberate indifference to his serious medical condition and whether these defendants acted with deliberate indifference. *See, e.g., Shelley v. Stirling*, C/A No. 4:18-2259-JFA-TER, 2019 WL 4307485, at *2, 6 (D.S.C. Apr. 19, 2019), report and recommendation adopted, C/A No. 4:18-2259-JFA-TER, 2019 WL 3296970 (D.S.C. July 23, 2019) (denying grant of summary judgment where plaintiff alleged he "informed six different Defendants that he needed medical attention, but they each ignored his requests" over a 24 hour period, creating "a question of fact . . . as to whether [the defendants] intentionally and unnecessarily prolonged Plaintiff's pain by ignoring his requests for medical attention.").

Additionally, because this matter must await determination of the facts now in conflict, qualified immunity as set forth in *Harlow* and its progeny is inappropriate, as well. Therefore, the undersigned recommends that Defendants' motion for summary judgment be denied with respect to

original).

Plaintiff's deliberate indifference claim as to Collins, Franklin, and Broadwater, but granted as to Thomas, Tanner, Lanham, Morgan, and Bryan.

### 2. Plaintiff's Motion to Amend

Fed. R. Civ. P. 15(a)(2) allows a party to amend a pleading with leave of court and further states "[t]he court should freely give leave when justice so requires." "A motion to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (citations and emphasis omitted).

Plaintiff's instant motion to amend is the third he has filed. The previous two sought to add as defendants to this action Warden Phelps ("Phelps"), as the current warden of FCI-Edgefield, and Walton-Battle ("Walton-Battle"), as supervisor over the health services department. [ECF No. 21, ECF No. 32]. However, both motions were denied without prejudice to refile where Plaintiff made no allegations against the new proposed defendants. [ECF No. 23, 38]. Likewise, in Plaintiff's instant motion to amend, Plaintiff seeks to add as defendants Phelps and Walton Battle. The undersigned denies Plaintiff's motion for the same reasons previously provided.

More specifically, Plaintiff's motion to amend is denied as futile where

he has not alleged personal involvement by either Phelps or Walton-Battle and seeks to bring claims against them as warden and supervisor, respectively.

*Bivens* has established that federal officials cannot be held liable for damages in their official capacities. *Chao v. Doe*, 306 F.3d 170, 184 (4th Cir. 2002) (citations and emphasis omitted) (holding "a *Bivens* action does not lie against either agencies or officials in their official capacity"); *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy under *Bivens* is against federal officials individually, not the federal government."). Based on Plaintiff's assertions, any claim against Phelps is in his official capacity and amending the complaint to add him would be futile.

Additionally, Plaintiff seeks to add Walton-Battle, but only alleges that she is a supervisor. [ECF No. 40]. This is insufficient under the principle of respondeat superior liability under *Bivens*. Liability is not premised upon respondeat superior, but upon "recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citing *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984)).

Because it would be futile to add as defendants Phelps and Walton-Battle, Plaintiff's motion to amend is denied. However, in Plaintiff's reply to

Defendants' opposition to Plaintiff's motion to amend, he seeks, for the first time, to substitute as Jane and John Doe defendants ("Doe defendants") the following officers: Boyd, Russell, and Dibbie. Although Plaintiff did not seek to substitute these potential defendants until his reply, Plaintiff thereafter also included allegations as to these potential defendants in his opposition to Defendants' motion for summary judgment, as summarized above in the factual background. [*See* ECF No. 48].

Plaintiff has failed to properly seek amendment of his complaint to substitute Boyd, Russell, and Dibbie for the previously-named Doe defendants. Plaintiff has not filed a motion to amend his complaint as to these proposed defendants, nor submitted a proposed amended complaint including allegations as to them. Additionally, Plaintiff has failed to properly complete documents required for service of process as to Boyd, Russell, and Dibbie. Therefore, the court is not yet able to authorize the issuance and service of process on these defendants.

Plaintiff has until September 18, 2020 (plus three days for mail time) to:

> 1)    Submit a motion to amend the complaint including proposed amended complaint. The undersigned notes that Plaintiff has previously failed to include a proposed amended complaint with his previously filed motions to amend. The undersigned additionally notes that Plaintiff's declaration submitted in opposition to Defendants' motion for summary judgment includes allegations not found in Plaintiff's complaint,

including those as to Boyd, Russell, and Dibbie. Plaintiff is reminded an amended complaint replaces the original complaint and should be complete in itself. *See Young*, 238 F.3d at 572 ("As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect.") (citation and internal quotation marks omitted).

2)    Complete one summons form which lists Boyd, Russell, and Dibbie. In the space following "TO: (Defendant's name and address)," Plaintiff is required to provide complete name and a full address where defendants can be served pursuant to Rule 4 of the Federal Rules of Civil Procedure. Plaintiff's complete name and full address must be provided in the blank section following "plaintiff or plaintiff's attorney, whose name and address are." Handwritten information must be printed and legible. Nothing else should be written by Plaintiff on either the front or back of the summons or in the margins. If it is necessary to list additional defendants whose names and street addresses do not fit in the space on the summons form, Plaintiff must attach an additional page of letter-sized (8½ inches by 11 inches) paper listing additional defendants and service addresses. One blank form is attached for Plaintiff's use.

3)    Complete, sign, and return a Form USM-285 for each of the following proposed defendants: Boyd, Russell, and Dibbie. Only one defendant's name and street address should appear on each form. Defendant's name and street address should be placed in the spaces preceded by the words "SERVE AT." Plaintiff's name and address should be placed in the space designated "SEND NOTICE OF SERVICE COPY TO . . .", and Plaintiff should sign where the form requests "Signature of Attorney or other Originator . . . ." Plaintiff must provide defendant's complete street address on the form (not a post office box address). Plaintiff must provide, and is responsible for, information sufficient to identify defendant(s) on the Form(s) USM-285. The United States Marshal cannot serve an improperly identified defendant, and unserved defendants may be dismissed as parties to a case. Blank forms are attached for Plaintiff's use. To the extent that counsel for Defendants is willing to accept service of an amended complaint against Boyd, Russell, and Dibbie, they are instructed to file a document so indicating.

III.    Conclusion

For the foregoing reasons, the undersigned denies without prejudice to refile Plaintiff's motion to amend and allows Plaintiff until September 18, 2020, to so refile, consistent with the directions provided above. [ECF No. 40]. Additionally, the undersigned recommends the district judge grant in part and deny in part Defendants' motion for summary judgment, allowing Plaintiff's claim for deliberate indifference to his serious medical needs to proceed as to Collins, Franklin, and Broadwater, but dismissing all other defendants. [ECF No. 43]. The Clerk of the Court is directed to mail a copy of this report and recommendation and order and the proper form documents to Plaintiff.

IT IS SO ORDERED AND RECOMMENDED.

*Shiva V. Hodges*

August 28, 2020                                    Shiva V. Hodges
Columbia, South Carolina                 United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).