IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Morris D. Green, | ) |
| | ) |
| Plaintiff, | ) |
| | )   C/A No. 1:20-cv-00821-DCC-SVH |
| v. | ) |
| | ) |
| C. Thomas, PA, Edgefield FCI Health | ) |
| Services; Dr. Collins, Edgefield FCI | )   **OPINION AND ORDER** |
| Health Services; Tanner, Pharmacist, | ) |
| Edgefield FCI Health Services; | ) |
| S. Lanham, Edgefield Health Services; | ) |
| Morgan, CO, Edgefield FCI; Bryan, CO, | ) |
| Edgefield FCI; Franklin, CO, Edgefield | ) |
| FCI; Lt. Broadwater; John and Jane | ) |
| Does, Edgefield FCI; other John and | ) |
| Jane Does, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This matter comes before the Court on Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 43. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (D.S.C.), this matter was referred to United States Magistrate Judge Shiva V. Hodges for pre-trial handling and a Report and Recommendation ("Report"). Magistrate Judge Hodges filed a Report on August 28, 2020, recommending that Defendants' motion for summary judgment be granted in part and denied in part. ECF No. 50. Defendants filed objections. ECF No. 52.

## **BACKGROUND**

Because it relies on additional exhibit evidence not referenced in the Complaint, Defendants' motion is construed as one for summary judgment. Therefore, the following

1

facts are drawn from Plaintiff's verified Complaint,[1] Defendants' exhibit evidence, and Plaintiff's sworn Declarations and are viewed in the light most favorable to the nonmoving party. *See Salley v. Myers*, 971 F.3d 308, 314 (4th Cir. 2020) ("A court sitting in summary judgment must always accept the facts in the light most favorable to the nonmoving party.") (citation and alteration omitted).

Plaintiff was incarcerated at Federal Correctional Institution ("FCI") Edgefield on the night of March 9, 2019, when he began to experience severe pain of the lower right abdomen and continuous vomiting. ECF No. 1 at 4. At approximately 1:00 a.m. on March 10, 2019, Plaintiff's cellmate summoned Defendant Morgan, a senior correctional officer, to notify him of Plaintiff's condition. ECF No. 48 at 4. Defendant Morgan left to inform the Lieutenant. He returned shortly thereafter and communicated the Lieutenant's suggestion to hold on until morning, as there was no medical staff available. *Id*.; ECF No. 1 at 5. At approximately 9:30 a.m., senior correctional officer Defendant Bryant, who had relieved Defendant Morgan on duty in Plaintiff's housing unit, obtained clearance to send Plaintiff to medical. ECF No. 48 at 4–5. Plaintiff was assisted to medical by another inmate, David Brown. *See* ECF No. 48-2 (Declaration of Mr. Brown). He was seen by Defendant Charles Thomas, RN, who assessed gastrointestinal upset and prescribed an antacid. ECF No. 43-12. Plaintiff returned to his cell where he continued to suffer severe pain and discomfort.

---

[1] The factual allegations contained in a prisoner's verified complaint may constitute sufficient evidence to defeat summary judgment. *See Williams v. Griffin*, 952 F.2d 820, 825 (4th Cir. 1991).

On March 11, 2019, Plaintiff's condition worsened and he could not get out of bed. ECF No. 1 at 5. Plaintiff and his cellmate alerted various unnamed correctional staff, who assured him that medical staff and the shift supervisor had been alerted. *Id*. at 6. However, no medical attention was provided.

On March 12, 2019, FCI Edgefield was placed on lockdown and all prisoners were confined to their cells. *Id*. From March 12 through March 17, Plaintiff's severe pain and distress persisted but he received no medical attention. Plaintiff periodically pressed the in-cell emergency alert button and made verbal and written requests for medical treatment. *Id*. at 8. During this time period Plaintiff twice alerted Defendant Tanner, a staff pharmacist who was dispensing medications in Plaintiff's unit, about his condition and gave her a sick-call request. *Id*.; ECF No. 48 at 5. Plaintiff also alerted Defendant Collins, a staff dental officer, and gave him two sick-call request forms. ECF No. 48 at 5, 11. On March 17, 2019, at approximately 5:00 p.m., Plaintiff alerted Defendant Lanham, RN, and gave her a sick-call request. *Id*. Various correctional officers—including, specifically, Defendants Bryant, Morgan, and Franklin—also went by Plaintiff's cell and were alerted, but no one took action to obtain medical care for Plaintiff. ECF No. 1 at 7. However, another inmate in Plaintiff's unit was taken to medical after complaining of low blood pressure. ECF No. 48 at 11. From March 14, 2019, onward, Plaintiff began to experience delirium, could not sleep or eat, was sweating profusely, and continued to suffer extreme pain. ECF No. 1 at 7.

On March 17, 2019, at approximately 11:00 p.m., Plaintiff's condition worsened. Plaintiff's cellmate summoned Correctional Officer Russell, who went to notify the shift

3

Lieutenant, Defendant Broadwater. ECF No. 48 at 5–6. Officer Russell returned minutes later with instructions from Defendant Broadwater to observe Plaintiff because there was no medical staff available. *Id*. at 6. Officer Russell explained that she was supposed to call Defendant Broadwater back "if it gets any worse." *Id*. at 13. When Plaintiff asked how much worse it had to get, Officer Russell replied, "I guess she wants you on the ground." *Id*.

The institutional lockdown ended on March 18, 2019. On that morning around 8:30 a.m., Plaintiff's cellmate notified Defendant Lanham and Correctional Officer Defendant Franklin once again about Plaintiff's condition. *Id*. at 13. Defendant Franklin told Plaintiff and his cellmate that Defendant Lanham was going to notify Plaintiff's medical provider. *Id*. at 14. At approximately 9:00 a.m., another inmate, Barry Johnson, asked Defendant Franklin why he had not called medical for Plaintiff. ECF No. 48-2 at 24. At or around 9:40 a.m., Plaintiff and his cellmate again asked Defendant Franklin to call medical. Defendant Franklin agreed and walked away. ECF No. 48 at 15. Twenty minutes later, Plaintiff's cellmate assisted him to Defendant Franklin's office. *Id*. Defendant Franklin informed them that he had called medical but would call them again. *Id*. Plaintiff returned to his cell. About forty minutes later, Defendant Franklin notified Plaintiff that medical was calling for him. *Id*.

Plaintiff was seen once again by Defendant Thomas, who examined him and ordered an x-ray. ECF No. 43-13. Although Defendant Thomas initially prescribed Acetaminophen, it was ultimately determined that Plaintiff needed to be treated at the emergency room. *Id*.; ECF No. 48 at 17–18. Doctors at the local hospital in Edgefield,

4

South Carolina, diagnosed acute appendicitis. ECF No. 1 at 9. It was determined that Plaintiff's appendix had ruptured and abscessed at some point during the last several days. *Id*. at 7. Plaintiff was transported to a larger hospital in Aiken, South Carolina, for emergency surgery and remained hospitalized for approximately 10 days. ECF No. 48 at 19. Plaintiff was informed that he was very close to death and that, if he had not been in such good physical condition, he would have died from the resulting infection. ECF No. 1 at 9. Plaintiff lost approximately twenty pounds as a result of his illness and took more than a month to recover. *Id*.

Plaintiff exhausted his administrative remedies and filed suit in this Court on February 24, 2020, alleging claims pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and the Eighth Amendment of the United States Constitution. ECF No. 1.

## **STANDARD OF REVIEW**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2015) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must

5

only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (citation omitted)).

## DISCUSSION

*Public Health Service Act Immunity*

Section 233 of the Public Health Service Act, 42 U.S.C. § 233, makes the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–2680, the exclusive remedy for damages "resulting from the performance of medical, surgical, dental, or related functions . . . by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment." 42 U.S.C. § 233(a); *Hui v. Castaneda*, 559 U.S. 799, 801–02 (2010). Consequently, Public Health Service ("PHS") officers and employees acting within the scope of their employment are not personally subject to *Bivens* actions. *Hui*, 559 U.S. at 802. The Court agrees with the Magistrate Judge's recommendation that individual Defendants Thomas, Tanner, and Lanham (collectively, "PHS Defendants") must be dismissed from the present action.

A corollary question not addressed in the Report is whether § 2679(d) of the FTCA, which provides for automatic substitution of the United States as a defendant in "any civil action or proceeding" against a government employee acting in the scope of employment, applies in this context. *See* 28 U.S.C. § 2679(d)(1); *Hui*, 559 U.S. at 802 ("When federal employees are sued for damages for harms caused in the course of their employment, the [FTCA] generally authorizes substitution of the United States as the defendant."). Although § 233 contains no specific substitution provision for actions commenced in

6

federal court,[2] it makes the FTCA the exclusive remedy for damages against PHS officers. By its plain terms, § 2679(d)(1) of the FTCA applies to "any" civil actions against government employees certified to be acting in the scope of employment.  This Court therefore concludes that § 2679(d)(1) independently effects the automatic substitution of the United States in non-removed cases against PHS defendants.

In Defendants' motion for summary judgment, Assistant United States Attorney Barbara M. Bowens certified that Defendants Thomas, Tanner, and Lanham were acting in the scope of their employment as PHS officers at all relevant times.  *See Robles v. Beaufort Mem'l Hosp.*, 482 F. Supp. 2d 700, 705 (D.S.C. 2007) (finding that a statement by the Assistant United States Attorney, in the Notice of Removal, that relevant acts were done "under the color of [defendants'] lawful duties" as federal employees constituted "the necessary certification of scope of employment pursuant to the FTCA").  Section 2679(d)(1) therefore mandates and effectuates the automatic substitution of the United States as the party defendant in place of Defendants Thomas, Tanner, and Lanham, as well as the automatic conversion of Plaintiff's claims against the PHS Defendants into claims under the provisions of the FTCA.  *See id*. (upon certification, any such civil action "shall be deemed an action against the United States under the provisions of this title"); *D'Alessandro v. United States*, 2019 WL 2514827, at *8 (W.D.N.Y. June 18, 2019) (construing complaint as raising claims under the FTCA despite the specific assertion of

---

[2] Conversely, when an action is commenced in state court and the Attorney General certifies that the defendant was acting in the scope of his employment, § 233 provides that the action shall be removed to federal court "and the proceeding deemed a tort action brought against the United States under the provisions of title 28 and all references thereto."  42 U.S.C. § 233(c).

*Bivens* claims and the plaintiff's failure to mention the FTCA).

Because, however, Plaintiff has failed to present evidence of the requisite exhaustion of administrative remedies, his FTCA claim against the United States must be dismissed. *See* 28 U.S.C. § 2675(a); *Robles*, 482 F. Supp. 2d at 706 (dismissing plaintiff's claims for failure to exhaust after granting substitution of the United States as the party defendant). This dismissal is without prejudice to Plaintiff's right to refile an FTCA claim in a future action.

### *Voluntary Dismissal of Defendants Morgan and Bryant*

In response to the motion for summary judgment, Plaintiff made the following declarations indicating that he did not intend to name Morgan or Bryant as Defendants in this case:

> I declare that Morgan was named in this suit to serve only as a witness. However, if Morgan never notified the Lieutenant and fabricated said statement then he too, showed deliberate indifference to petitioner's serious medical need.
>
> [ . . .]
>
> I declare that Bryant was named in this suit to serve only as a witness.

ECF No. 48 at 4, 5.

Pursuant to Federal Rule of Civil Procedure 41, an action may be dismissed "at the plaintiff's request," at any stage of the proceedings, "by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The Court construes Plaintiff's declarations as requests for the voluntary dismissal of Defendants Morgan and Bryant

8

and considers their dismissal at this early stage to be proper.[3]  Accordingly, Defendants Morgan and Bryant are dismissed without prejudice.  *See id*. ("Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.").

**Defendants Collins and Franklin**

### Reliance on Medical Judgment

Defendants object to the Magistrate Judge's finding that Defendant Collins and Franklin were not entitled to rely on the medical judgment of various medical personnel in denying Plaintiff treatment from March 10 through March 18, 2019.

Applying the rule of *Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008), the Magistrate Judge recommended denying Defendants' motion for summary judgment as to Defendants Collins and Franklin because, although they were "entitled to rely on the judgment of medical personnel in determining the appropriate care for Plaintiff," in this case there was "no judgment by medical personnel."  ECF No. 50 at 20 n.15.  In *Iko*, the plaintiff collapsed after being pepper sprayed by correctional officers.  He was taken to a medical room to be examined by a nurse, who explained that she was there to offer medical treatment but in fact provided none.  *Iko*, 535 F.3d at 232.  The plaintiff was transported back to his cell where he died from asphyxiation.  On motion for summary judgment, the defendant officers "contended that they were entitled to defer to the actions and medical decisions of the nurse"—in other words, that they "could delegate Iko's

---

[3] The undersigned notes that Plaintiff's stated intention of naming Morgan as a Defendant in a future amended complaint, if discovery should reveal facts supporting his deliberate indifference to Plaintiff's serious medical needs, is in conformity with this construction.

medical care to the nurse and be relieved of any further duty to monitor Iko's health." *Id*. at 242.  The Fourth Circuit rejected the officers' argument, finding that Iko was "in their charge" at the time of the challenged inaction and explaining:

> This case is further distinguishable from the precedent on which the officers seek to rely because it is undisputed that Iko received *no* medical treatment whatsoever.  There was therefore *no* medical opinion to which the officers could have deferred.  Instead, the question here is whether the officers should be permitted to defer to the nurse's apparent decision *not to treat* Iko after he was pepper sprayed, and after he collapsed in their presence.

*Id*.  The Fourth Circuit therefore upheld the district court's denial of qualified immunity.

Defendants Collins and Franklin contend that *Iko* is "clearly distinguishable," ECF No. 52 at 6, and that the various medical personnel who passed through Plaintiff's cell made medical judgments (i.e., determining that Plaintiff did not require any treatment) on which they were entitled to rely.  But the evidence, viewed in the light most favorable to Plaintiff, does not support their contention.  Although it is undisputed that various medical personnel passed through Plaintiff's cell in the days following Thomas's first examination, there is no indication that any of them so much as examined Plaintiff, let alone offered him treatment.  The question, therefore, is not whether Defendants Collins and Franklin were entitled to rely on the medical judgment of these third parties, but whether they were entitled to rely on their "decision *not to treat*."  *Iko*, 535 F.3d at 242.  The undersigned finds that the Magistrate Judge correctly applied the precedent of *Iko* in determining that they were not.[4]

---

[4] The cases cited by Defendants are not to the contrary, because they involve situations in which medical personnel offered treatment to the plaintiff.  *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995) (noting that prison officials might have incurred

10

Defendants contend that even if Plaintiff's constitutional right was violated, the right was not clearly established because "it is not clearly established that these Defendants were unjustified in their reliance on medical staff." ECF No. 52 at 12; *see Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004) (officers are entitled to qualified immunity unless "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right") (alterations and citation omitted). This argument was rejected in *Iko*:

> Neither can the officers succeed in showing that this right was not clearly established. The right to adequate medical care had already been carefully circumscribed in the caselaw, with its objective and subjective components spelled out to ensure that only the most wanton indifference goes unpunished. The officers therefore had "fair warning" that their conduct was unconstitutional.

535 F.3d at 243 n.12 (quoting *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006)). The Court likewise finds that Plaintiff's right to medical treatment was clearly established and Defendants are not entitled to qualified immunity on that basis.

---

liability for contravening treatment prescribed by the prison psychologist); *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (finding no supervisory liability for prison officials where "everything in the record suggest[ed] that the wardens closely monitored [the decedent's] health and ensured that she received medical treatment"); *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979) (finding no conceivable liability on the part of other prison officials where "[t]he prison physician, to whom they referred the plaintiff, promptly saw the plaintiff and engaged on a course of treatment").

11

*Subjective Prong of Plaintiff's* <u>Bivens</u> *Claim*[5]

Defendants Collins and Franklin further argue that even if the medical personnel did not make medical judgments on which they were entitled to rely, the "Defendants would have to know that the medical judgment,[6] regardless of brevity, made by medical personnel at Plaintiff's cell created an objective risk to the Plaintiff's health, and disregarded [sic] that risk."  ECF No. 52 at 3.  In other words, they argue that, in light of the inaction of medical personnel, Defendants Collins and Franklin could not reasonably have anticipated the risk to Plaintiff of delaying his treatment.

This argument is largely a repackaging of the one addressed above and is similarly unavailing.  To the extent Defendants argue that they were entitled to a subjective belief that Plaintiff's medical needs were being met because of the non-treatment by medical personnel, it is functionally identical to the argument rejected above and will not be further discussed.

To the extent Defendants argue that they were not subjectively aware of the risk to Plaintiff (independent of the action or inaction of medical personnel) and therefore did not consciously disregard that risk, the Court is likewise unconvinced.  "Whether a prison

---

[5] A plaintiff asserting a *Bivens* claim must satisfy the two-pronged test set forth by the Supreme Court.  *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)).  This requires the plaintiff to demonstrate that (1) the constitutional deprivation was "sufficiently serious" (the "objective" prong), and (2) the defendant officials "knew of and disregarded an excessive risk to inmate health or safety" (the "subjective" prong).  *Id*. (alterations and citations omitted).

[6] Somewhat confusingly, Defendants posit this is true even if the actions of the medical personnel "were not relevant judgments of medical personnel."  ECF No. 52 at 3.

12

official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (internal citations omitted). Defendants argue that Plaintiff's complaints of "abdominal pain" would not have made it clear "to a non-medical staff member, not trained in these types of medical matters and unfamiliar with the particulars of Plaintiff's illness," that he was in medical need.[7] ECF No. 52 at 9. The Court disagrees. Making all reasonable inferences in Plaintiff's favor, Plaintiff's condition was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Scinto v. Stansberry*, 841 F.3d 219, 232 (4th Cir. 2016) (quoting *Iko*, 535 F.3d at 241). On March 10, 2019, the day of his examination by Thomas, Plaintiff was already suffering extreme abdominal pain and continuous vomiting. On March 11, 2019, Plaintiff's condition worsened and he was unable to get out of bed. Beginning on March 14, 2019, Plaintiff was delirious, sweating profusely, unable to sleep or eat, and still suffering from extreme pain. His condition worsened further on the night of March 17, 2019. By the morning of March 18, 2019, the severity of Plaintiff's condition was so extraordinarily apparent that other inmates in the unit were shouting at Defendant Franklin to get help.[8] *See, e.g.*, ECF No. 48-2 at 3, 7,

---

[7] For the reasons described above, the Court disregards Defendants' further assertion that Defendants Collins and Franklin did not have "a duty to second guess the health care decisions of trained health care professionals." ECF No. 52 at 9.

[8] Defendants Collins and Franklin nonetheless argue that they could not have been expected to realize the urgent need for medical treatment because Thomas, a trained health care professional, did not immediately determine that Plaintiff needed to go to the

13

10, 14, 16, 19, 26, 29, 32, 37, 39.  Although Defendants assert there are "no facts indicating that the individual non-medical defendants were aware of the alleged inadequate medical care," ECF No. 52 at 8, it appears, on the contrary, that Defendants Collins and Franklin were aware Plaintiff had received no medical treatment since March 10.  It is undisputed that during this time, according to the doctors who later treated him, Plaintiff's appendix had ruptured and he was very close to death.

From this evidence a reasonable factfinder might well conclude that Defendants Collins and Franklin knew of, and disregarded, the risk of serious harm to Plaintiff contingent upon a delay in procuring treatment.  *See*, *e.g.*, *Scinto*, 841 F.3d at 232 ("A juror could reasonably infer that failing to treat, for two to five days, an inmate who is vomiting blood and experiencing evident physical distress creates a substantial risk that serious bodily injury will result or has already occurred."); *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 894, 900 (6th Cir. 2004) (reversing summary judgment for defendant prison officials where the plaintiff suffered for over two days with appendicitis, characterized by sharp abdominal pain and vomiting, before receiving medical treatment).  Defendant Collins was made aware of Plaintiff's medical need on at least two occasions and apparently took no action at all.  *See* ECF No. 48 at 11 (Plaintiff spoke with Dr. Collins on the evening of March 14 and gave him sick-call requests on March 14 and March 15).

---

hospital when he examined him on March 18.  ECF No. 52 at 9.  This argument ignores the distinction between realizing an individual requires medical treatment and determining that an individual requires a specific kind of medical treatment, i.e., transportation to the emergency room.  The need for urgent medical treatment was apparently evident to Plaintiff's fellow inmates, most of whom are not, presumably, trained health care professionals.

While Defendant Franklin did ultimately seek treatment for Plaintiff by calling medical staff, he delayed doing so for at least an hour.[9]  See id. at 14–15.  Given Plaintiff's obvious and life-threatening medical need, the reasonableness of this delay—and whether it constituted deliberate indifference—is properly a question for the finder of fact.

***New Facts Regarding Defendant Broadwater***

Defendants assert that summary judgment in favor of Defendant Broadwater is appropriate because she was not on duty on the date specified in the Complaint, and because Plaintiff's later declaration regarding her actions on March 17, 2019, raise a new claim not properly before the Court.  ECF No. 52 at 13.

The Complaint alleges that on or about March 12, 2019, "Defendant Bryant told plaintiff that shift supervisor (defendant Broadwater or Lt. John or Jane Doe) were alerted about plaintiff's condition."  ECF No. 1 at 6.  Defendant Broadwater declares that she was not on duty on March 12.  ECF No. 43-10 at 2.  In his response to the motion for summary judgment, however, Plaintiff declares that Defendant Broadwater was notified of his condition on March 17, 2019, at approximately 11:00 p.m. and that she instructed shift Lieutenant Russell there was "no medical staff available" and to continue monitoring Plaintiff.  ECF No. 48 at 5–6.

---

[9] As Defendants point out, it is reasonable to assume Defendant Franklin initially took no action when alerted of Plaintiff's condition at 8:30 a.m. because he believed that S. Lanham, RN, was going to contact Plaintiff's provider.  See ECF No. 48 at 14.  However, Defendant Franklin was once again alerted to Plaintiff's condition and lack of medical treatment at 9:00 a.m.  ECF No. 48-2 at 24.  He took no action until approximately 9:40 a.m., when Plaintiff and Plaintiff's cellmate again asked him to call medical.  ECF No. 48 at 15.  Viewing the evidence of Plaintiff's medical condition in the light most favorable to Plaintiff, a reasonable factfinder could conclude that Defendant Franklin's delay evidenced deliberate indifference.

The undersigned disagrees with Defendants' characterization of these additional factual details as "[n]ew claims." *See id*. The Complaint alleges a claim of Eighth Amendment deliberate indifference against Defendant Broadwater based on her failure to obtain treatment for Plaintiff's serious medical needs. ECF No. 1 at 11. Plaintiff's subsequent declaration does not alter the nature or scope of this claim. The Complaint further alleges that from March 11, 2019, through March 17, 2019, "[e]very single prison staff and named defendants [sic] that were aware of plaintiff's condition in his cell during this time failed to provide plaintiff with the emergency medical care he required[.]" *Id*. at 8. Defendant Broadwater is a named Defendant who was aware of Plaintiff's condition on March 17, 2019, and her actions on March 17 are therefore encompassed by the allegations of the Complaint. Plaintiff is not required to amend his Complaint in response to every new piece of factual information that arises, particularly those that do not alter the fundamental nature of his claims. Accordingly, the Court adopts the Magistrate Judge's recommendation to deny summary judgment in favor of Defendant Broadwater.

## CONCLUSION

For the reasons set forth above, the Court **OVERRULES** Defendants' Objections [52] and **ADOPTS** the Report [50], except as otherwise stated herein. Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment [43] is **GRANTED IN PART** and **DENIED IN PART**.

It is further **ORDERED** as follows:

Individual Defendants Thomas, Tanner, and Lanham are hereby **DISMISSED** from this action, and the United States **SUBSTITUTED** in their place as the party defendant.

16

All claims against the United States are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

Defendants Morgan and Bryant are voluntarily **DISMISSED WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 41(a)(2).

Summary judgment is **DENIED** as to Defendants Collins, Franklin, and Broadwater, and Plaintiff's claims against those Defendants may proceed.

IT IS SO ORDERED.

                                                                   s/ Donald C. Coggins, Jr.
                                                                   United States District Judge

March 31, 2021
Spartanburg, South Carolina